IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| MIDWEST*ONE* BANK,<br><br>Plaintiff,<br><br>v.<br><br>AMANDA ANDERSON, MICHAEL ROSENTHAL, and ELEVATE WEALTH MANAGEMENT,<br><br>Defendants. | CASE NO. 1:25-cv-00412-TPO<br><br>**DEFENDANT AMANDA ANDERSON'S BRIEF IN SUPPORT OF MOTION TO DISMISS UNDER FEDRAL RULE OF CIVIL PROCEDURE 12(b)(6)** |

Defendant Amanda Anderson, by and through the undersigned counsel, files this Brief in Support of her Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6).

## Table of Contents

Introduction ........................................................................................................................... 2

Factual and Procedural Background ..................................................................................... 2

Argument .............................................................................................................................. 4

   I.  Count One (Breach of Duty of Loyalty) pleads no actionable conduct by Amanda Anderson. ................................................................................................................... 4

      A.  The alleged conduct fails to sufficiently allege a breach of duty as a matter of law. ...... 4

      B.  Mere preparation to compete is privileged conduct. ........................................................ 8

   II.  Count Three (Aiding and Abetting) fails on the merits as a matter of law ........................ 10

      A.  Ms. Sutterfield did not breach a duty to Plaintiff. ......................................................... 10

      B.  Ms. Anderson lacked actual knowledge of wrongdoing. ............................................... 12

      C.  Ms. Anderson did not render 'substantial assistance.' ................................................... 15

Conclusion ............................................................................................................................ 16

1

## Introduction

Rather than accept Defendant's clients' choice of financial advisor, Plaintiff seeks to punish Ms. Anderson for departing its business and seeking alternative employment. Ms. Anderson is not the target defendant—Plaintiff is already suing Carol Sutterfield in the Southern District of Iowa. Predictably, then, the claims against Ms. Anderson are not legally cognizable. Because Plaintiff's claims against Ms. Anderson thus fail as a matter of law, Ms. Anderson respectfully requests they be dismissed.

## Factual and Procedural Background

During and prior to 2018, Ms. Anderson was working as an administrative assistant for Carol Sutterfield, a Colorado resident and licensed financial advisor. Dkt. # 1 ¶¶ 12, 28. In 2018, Ms. Anderson and Ms. Sutterfield began working for Plaintiff, an Iowa corporation seeking to break into the Colorado market. *Id.* ¶¶ 4, 12, 28. On October 6, 2023, Ms. Anderson and Ms. Sutterfield voluntarily resigned from Plaintiff's employ to work for Mike Rosenthal and Elevate Wealth Management. *See id.* ¶ 67. Nearly all of Ms. Sutterfield's clients predated their employment with Plaintiff and, after being apprised of Ms. Sutterfield's and Ms. Anderson's resignations, elected to follow them elsewhere.[1] Importantly, Ms. Anderson never signed a written contract of any kind relative to her employment with Plaintiff.

---

[1] Through discovery in a related matter in Iowa, Plaintiff admitted that none of its other agents or employees had meaningful relationships with Ms. Sutterfield's clients. Yet, somehow, Plaintiff perceives an entitlement to those clients' business.

On July 30, 2024, Plaintiff filed a complaint against Ms. Sutterfield, Ms. Anderson, Mr. Rosenthal, and Elevate Wealth Management, in the U.S. District Court for the Southern District of Iowa. *See id.* ¶ 1 n.1. That complaint alleged two causes of action against Ms. Anderson: (1) breach of duty of loyalty; and (2) aiding and abetting Ms. Sutterfield's breach of duty of loyalty. On January 3, 2025, the Southern District of Iowa granted Ms. Anderson's, Mr. Rosenthal's, and Elevate Wealth Management's motions to dismiss for lack of personal jurisdiction. *See generally MidWestOne Bank v. Sutterfield*, No. 3:24-cv-00062, 2025 WL 25171 (S.D. Iowa Jan. 3, 2025). Plaintiff thus filed the instant Complaint in this jurisdiction, making identical allegations to its Iowa complaint and bringing the same causes of action against Ms. Anderson: (1) breach of fiduciary duty (Count One); and (2) aiding and abetting (Count Three).

## **Legal Standards**

Under Federal Rule of Civil Procedure 12(b)(6), courts must grant a motion to dismiss for failure to state a claim unless the complaint alleges sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *DTC Energy Grp., Inc. v. Hirschfeld*, 420 F. Supp. 3d 1163, 1171 (D. Colo. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "If a complaint's allegations are 'so general that they encompass a wide swath of conduct, much of it innocent,' then [the] plaintiff has not stated a plausible claim." *Id.* (quoting *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012)). Although the Court views the factual allegations in the complaint as true on a Rule 12(b)(6) motion,

the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

In cases with multiple allegations against multiple defendants, "it is particularly important in such circumstances that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations." *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (citing *Twombly*, 550 U.S. at 565 n.10).

## Argument

Plaintiff's two causes of action against Ms. Anderson—(I) breach of fiduciary duty of loyalty (Count One); and (II) aiding and abetting (Count Three)—fail to state a claim under Colorado law. Ms. Anderson therefore respectfully requests the Court dismiss her from this action.

**I.   Count One (Breach of Duty of Loyalty) pleads no actionable conduct by Amanda Anderson.**

Because (A) the Complaint fails to allege facts sufficient to show a duty was owed or breached; and (B) at most, the Complaint alleges that Ms. Anderson engaged in privileged conduct by assisting another in *preparing to* compete with Plaintiff, the Complaint's Count One fails to state a claim as a matter of law.

**A.   The alleged conduct fails to sufficiently allege a breach of duty as a matter of law.**

"Under Colorado law, an employee breaches her duty of loyalty if she solicits customers for a rival business or solicits other employees to terminate their employment." *Hirschfeld*, 420 F.

4

Supp. 3d at 1174. Ms. Anderson is alleged to have done neither. As such, the Complaint fails to state a claim against her.

In assessing whether an employee has breached a duty of loyalty under Colorado law, the Tenth Circuit instructs courts to analyze the following factors: "(1) the nature of the employment relationship; (2) the impact or potential impact of the employee's actions on the employer's operations; and (3) the extent of any benefits promised or inducements made . . . to obtain their services in the competing business." *Id.* at 1174 (omission in original) (quoting *In re Prof'l Home Health Care, Inc.*, 159 F. App'x 32, 34 (10th Cir. 2005)); *see also Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 497 (Colo. 1989) (en banc). Because the duty of loyalty in employment relationships derives from the similarities between employment and principal/agent relationships, and because "not every employee is the employer's agent," the employee's "job functions and level of independent authority [are] central to the analysis." *Hirschfeld*, 420 F. Supp. 3d at 1175. Here, the foregoing factors—and, in particular, Ms. Anderson's job functions and level of independent authority—demonstrate that her alleged actions (even taken as true) do not constitute a breach of any duty of loyalty as a matter of law.

To wit, in *DTC Energy Group, Inc. v. Hirschfeld*, this Court analyzed a breach of duty of loyalty claim against a "human resources employee" who, at her boss's direction, sent onboarding paperwork to customers to assist the boss in preparing to join a competing firm. *Id.* at 1170. The employee moved to dismiss the duty of loyalty claim against her, arguing (as here) that the claim failed as a matter of law because "she lacked 'substantial discretion' in her role." *Id.* at 1174.

5

This Court held "that the complaint fail[ed] to state a claim against [the employee] for breach of the duty of loyalty," and granted the employee's motion. *Id.* at 1174–75. Noting that " 'not every employee is the employer's agent, and an employee may act as an agent with regard to certain job functions but not with regard to others,' " the Court focused particularly on the employee's "job functions and level of independent authority." *Id.* at 1175 (quoting *Mulei*, 771 P.2d at 503 (Mullarkey, J., specially concurring)). Where the only facts alleged in the complaint as to the employee's job functions were that she "was employed as a 'human resources specialist,' " and "acted at the direction of [her boss]," and where the complaint did "not allege that [the employee] actively solicited customers," but instead only "that her job was to send customers 'onboarding paperwork,' " the Court expressly held such allegations were "insufficient to demonstrate that [the employee], in her role as human resources specialist, was acting as [the employer's] agent." *Id.*

Like the employee in *Hirschfeld*, Ms. Anderson was employed as a mere assistant, and acted at the direction of her boss, Ms. Sutterfield. *Cf. id.* And, like the employee in *Hirschfeld*, there is no allegation that Ms. Anderson "actively solicited customers," *id.*, only that Ms. Sutterfield did so. *See* Dkt. # 1 ¶¶ 63–64, 71, 74; *cf. Robbins*, 519 F.3d at 1250 ("[I]t is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations.").[2] But where the complaint in *Hirschfeld* at least specified what the

---

[2] This same reasoning counsels in favor of Ms. Anderson on the third factor, "the extent of any benefits promised or inducements made . . . to obtain the[] [clients' business] in the competing

6

employee's job duties were (i.e., "her job was to send customers 'onboarding paperwork,' " *Hirschfeld*, 420 F. Supp. 3d at 1175), Plaintiff's Complaint does not even *attempt* to describe the parameters of Ms. Anderson's role. *See* Dkt. # 1 ¶ 28 (describing Ms. Anderson only as Ms. Sutterfield's "assistant").

As such, the Complaint alleges "insufficient [facts] to demonstrate that [Ms. Anderson], in her role as [an assistant], was acting as [Plaintiff's] agent." *Hirschfeld*, 420 F. Supp. 3d at 1175. Thus, like the dismissed claim in *Hirschfeld*, Plaintiff's Count One is deficient as a matter of law. Indeed, if anything, this case presents a stronger basis for dismissal than the duty of loyalty claim this Court dismissed there. *Cf. id.* at 1174–75. Plaintiff's Complaint is bereft of *any* facts evincing Ms. Anderson exercised functions sufficient to characterize her as Plaintiff's 'agent,' subjecting her to heightened responsibilities such as would justify the imposition of a fiduciary relationship. *See id.* at 1175 ("Employees *in a position of trust and confidence* with their employer owe a fiduciary duty of loyalty to the employer in matters related to their employment." (emphasis supplied) (quoting Restatement of Employment Law § 8.01(a) (Am. L. Inst. 2015))).

Without any facts describing Ms. Anderson's job functions *at all*, Plaintiff's Count One cannot be supported as a matter of law. For this reason alone, Plaintiff's Count One fails.

---

business." *Hirschfeld*, 420 F. Supp. 3d at 1174 (omission in original) (quoting *In re Prof'l Home Health Care, Inc.*, 159 F. App'x at 34). Since she is not alleged to have contacted clients, she cannot have promised any benefits or inducements to them.

7

### B.   Mere preparation to compete is privileged conduct.

Even if the Complaint contained sufficient details to plausibly allege that Ms. Anderson was Plaintiff's agent and therefore owed a fiduciary duty of loyalty (it does not), the *conduct* by which Ms. Anderson allegedly breached such a duty is privileged preparation to compete under Colorado law. As such, it cannot support Plaintiffs claims.

For decades, Colorado "courts have recognized 'a privilege in favor of employees which enables them to prepare or make arrangements to compete with their employers prior to leaving the employ of their prospective rivals without fear of incurring liability for breach of their fiduciary duty of loyalty.' " *Mulei*, 771 P.2d at 493 (quoting *Maryland Metals, Inc. v. Metzner*, 382 A.2d 564, 569 (Md. 1978)). "Generally, under his privilege to make preparations to compete after the termination of his employment, an employee may advise current customers that he will be leaving his current employment." *Id.* at 493–94. None of Ms. Anderson's alleged conduct in the Complaint rises above mere preparation. Accordingly, Count One fails as a matter of law.

At most, all Ms. Anderson did that Plaintiff takes issue with was *assist* Ms. Sutterfield in *preparing* to contact clients and inform them of Ms. Sutterfield's departure. The only specific allegations of Ms. Anderson's conduct in the Complaint are as follows:

> 33.   On July 19, 2023, Anderson and Sutterfield exchanged emails with an attached spreadsheet, entitled "Carol's Client-Summary-6-28-2023." The spreadsheet includes 132 client names, social-security numbers, tax-identification numbers, email addresses, mobile phone numbers, home phone numbers, birthdates, ages, addresses, account types, account values, account registrations, ACH information, beneficiary information, and important client notes.

> 35.   On September 8, 2023, Anderson sent an email to Sutterfield attaching the "most updated version" of "Carol's Client-Summary-6-28-2023," "Annuity Tracking Spreadsheet 2023," and "Client and Account Summary 10-6-2023 and 10-12 with addresses."

8

>37. Upon information and belief, Anderson sent Sutterfield these documents with the knowledge that Sutterfield would use this information to compete with MidWestOne, in violation of her restrictive covenants.
>
>39. On September 15, 2023, Anderson again emailed Sutterfield a copy of "Carol's Client Summary 6-28-23," which again contained Confidential or Trade Secret Information as defined by the Confidentiality and Non-Solicitation Agreement.
>
>58. On September 25, 2023—as Sutterfield continued to negotiate her departure from MidWestOne with Rosenthal working behind the scenes—Anderson also began sending information to Sutterfield's personal email address, including an LPL Financial termination request form.
>
>61. Simultaneously, on September 28, 2023, Anderson sent three emails containing account information for a MidWestOne client to Sutterfield's personal email address.
>
>65. On October 5, 2023, Anderson sent a blank email to Sutterfield attaching a spreadsheet entitled "Annuity Tracking Spreadsheet 2023." The spreadsheet includes information regarding 47 clients, including their contract numbers, account types, company, rider, policy value, holdings, surrender date, and notes.

Dkt. # 1 ¶¶ 33, 35, 37, 39, 58, 61, 65.

In short, the Complaint alleges merely that, while they were both still employed by Plaintiff, Ms. Anderson forwarded her boss three spreadsheets containing her boss's client information—information her boss had access to and could have garnered on her own. Nowhere in the Complaint does Plaintiff allege that Ms. Anderson herself ever contacted clients or employees. *See id.* ¶¶ 63–64, 71, 74; *cf. Robbins*, 519 F.3d at 1250 ("[I]t is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations."). Even if it did, though, that too would be protected preparatory conduct. *Mulei*, 771 P.2d at 493–94 ("Generally, under his privilege to make preparations to compete after the termination of his employment, an employee may advise current customers that he will be leaving his current

employment."). Thus, even if taken as true, all of Ms. Anderson's alleged conduct is protected under Colorado law and insufficient to state a claim for breach of a duty of loyalty.

For the foregoing reasons, Ms. Anderson respectfully requests the Court dismiss Plaintiff's Count One.

**II.     Count Three (Aiding and Abetting) fails on the merits as a matter of law.**

Count Three alleges Ms. Anderson 'aided and abetted' Ms. Sutterfield's alleged solicitation and misappropriation of Plaintiff's confidential information. As with Count One, Count Three fails to state a claim for relief and should be dismissed.

Under Colorado law, to prove its claim for aiding and abetting breach of a fiduciary duty, Plaintiff must "satisfy the following elements: '(1) breach by a fiduciary of a duty owed to a plaintiff, (2) a defendant's knowing participation in the breach, . . . (3) damages,' " and (4) that the defendant " 'g[a]ve substantial assistance to the other's breach.' " *Alvarez LLC v. Blazar Tech. Sols., LLC*, No. 17-cv-01339, 2019 WL 3205952, at *1 (D. Colo. July 16, 2019) (emphasis omitted) (quoting *Nelson v. Elway*, 971 P.2d 245, 249–50 (Colo. App. 1998)).

Here, Plaintiff's aiding and abetting claim fails because the Complaint does not plausibly allege: (A) a breach by Ms. Sutterfield; (B) that Ms. Anderson had actual knowledge of Ms. Sutterfield's alleged breach; or (C) that Ms. Anderson knowingly and substantially assisted the alleged breach.

**A.     Ms. Sutterfield did not breach a duty to Plaintiff.**

Before Ms. Anderson can be held liable for aiding and abetting Ms. Sutterfield, Plaintiff must show that Ms. Sutterfield committed some actionable wrong. It cannot do so here.

As with Ms. Anderson, the Complaint alleges only that Ms. Sutterfield engaged in privileged preparatory conduct. Colorado "courts have recognized 'a privilege in favor of employees which enables them to prepare or make arrangements to compete with their employers prior to leaving the employ of their prospective rivals without fear of incurring liability for breach of their fiduciary duty of loyalty.' " *Mulei*, 771 P.2d at 493 (quoting *Metzner*, 382 A.2d at 569). "Generally, under his privilege to make preparations to compete after the termination of his employment, an employee may advise current customers that he will be leaving his current employment." *Id.* at 493–94.[3]

That is precisely what happened here. In preparing to leave Plaintiff's employ, Ms. Sutterfield notified her clients that she would be changing firms. As the Complaint highlights, one client wrote to Ms. Sutterfield and Ms. Anderson to confirm the details of Ms. Sutterfield's move. Dkt. # 1 ¶ 63. But Plaintiff draws the wrong conclusion from the client's inquiry—far from "clearly demonstrat[ing] that Sutterfield was soliciting [Plaintiff's] clients," *id.* ¶ 64, it merely shows that Ms. Sutterfield—as it relates to the claims against Ms. Anderson—was exercising her "privilege to . . . advise current customers that [s]he will be leaving h[er] current employment," *Mulei*, 771 P.2d at 493–94.

---

[3] Ms. Sutterfield's conduct is not before this Court, nor is it for this Court to resolve. Rather, Plaintiff's Colorado pleading as to Ms. Anderson relates only to assisting Ms. Sutterfield in preparing to compete. That is not good enough.

### B. Ms. Anderson lacked actual knowledge of wrongdoing.

As this Court recently clarified, the second element of an aiding and abetting claim under Colorado law requires proof the aider had *actual* knowledge of the principal's wrongdoing. *Alvarez LLC*, 2019 WL 3205952, at *2. This means proof that the defendant had actual "knowledge [of] the primary violator's status as a fiduciary *and* knowledge that the primary's conduct contravenes a fiduciary duty." *AARRH Project LLC v. Sacco Farms LLC*, No. 23CA0075, 2024 WL 4032292, at *12 (Colo. App. June 13, 2024) (emphasis supplied) (quoting *Holmes v. Young*, 885 P.2d 305, 309–10 (Colo. App. 1994)).

As Ms. Anderson had *no* knowledge, let alone *actual* knowledge, of either condition, Plaintiff's claim necessarily fails. Instead, the Complaint makes only conclusory legal assertions that Ms. Anderson had any knowledge (let alone actual knowledge) that Ms. Sutterfield owed any fiduciary duty or that her conduct "contravene[d] a fiduciary duty." *Id.* (quoting *Holmes*, 885 P.2d at 309–10). Where Ms. Anderson lacked actual knowledge of Ms. Sutterfield's status as a fiduciary and concomitant obligations, she would necessarily lack actual knowledge that Ms. Sutterfield was allegedly acting in contravention of those obligations. For the same reason, Ms. Anderson would be unaware of what materials Plaintiff considered its confidential or trade secret information under its contracts with Ms. Sutterfield.

As this Court has noted in dismissing aiding and abetting claims for want of actual knowledge—to satisfy this element, a complaint must plausibly allege that the defendant was aware that her assistance furthered the principal's wrongdoing, as opposed to being part of routine transactional work. *See Medved v. DeAtley*, No. 12-cv-03034, 2013 WL 4873054, at *7–9 (D. Colo.

12

Sept. 11, 2013). This requirement is crucial to prevent innocent actors from being unwittingly swept into wrongdoing of which they were unaware, and ensure that aiding-and-abetting liability punishes only culpable actors who freely chose to participate in wrongdoing. For example, where business projects often involve the work of many individuals separately performing small pieces of work that combine to make the entire project complete, many of the actors are working with only those fractional pieces of the puzzle necessary to complete their assigned tasks. If the project turns out to have been wrongful, the actual knowledge requirement thus ensures that the culpable parties are those who were aware of the full picture of the wrongdoing.

Accordingly, in *Medved v. DeAtley*, this Court dismissed aiding and abetting claims levied against a third-party professional whose services were allegedly used in furtherance of a fraudulent scheme to sell invalid tax credits. 2013 WL 4873054, at *7–10. Although the complaint "include[d] facts about what defendants allegedly did (review and approve conservation easement tax credits) and what defendants knew about the purpose of their legal services (the conservation easement tax credits would be used in connection with property located in Colorado)," it failed to explain "the basis for defendants' knowledge of [the principal's] fraudulent activity." *Id.* at *8. On the contrary, the complaint presented no "facts detailing why or how defendants would have known that [the principal's] conservation easement tax credits were fraudulent." *Id.* Thus, this Court held that the complaint did "not allow the Court to plausibly infer that defendants knew or were aware that [the principal's] conservation easement tax credits were fraudulent," and dismissed the aiding and abetting claims. 2013 WL 4873054, at *8–10.

The same is true here, and a similar result is warranted. Although Plaintiff's Complaint includes facts about what Ms. Anderson allegedly did (send her boss lists of her boss's clients' contact and account information), it contains no "facts detailing why or how [Ms. Anderson] would have known that [Ms. Sutterfield's actions] were [wrongful]." *Id.* Instead, the Complaint makes only conclusory legal assertions, "[u]pon information and belief," that Ms. Anderson was in any way aware of Ms. Sutterfield's alleged fiduciary obligations *at all*, let alone that Ms. Sutterfield might use her assistance to breach them. Dkt. # 1 ¶¶ 31, 37, 96; *cf. Papasan*, 478 U.S. at 286 (noting the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). On the contrary, it is undisputed that Ms. Anderson was not a party to either contact and did not enter into similar agreements of her own with Plaintiff. "At most, [Plaintiff's] allegations show that [Ms. Anderson] knew that [Ms. Sutterfield]" planned to change firms and was contacting her clients to let them know, but those allegations "do not allow the Court to plausibly infer that [Ms. Anderson] knew or w[as] aware that," by doing so, Ms. Sutterfield was breaching fiduciary duties she allegedly owed to Plaintiff. *Medved*, 2013 WL 4873054, at *8.

Accordingly, because Ms. Anderson lacked actual knowledge of Ms. Sutterfield's alleged duties and of her alleged breaches, Ms. Anderson cannot have aided or abetted Ms. Sutterfield as a matter of law. *Cf. id.* ("Accordingly, without allegations from which the Court can plausibly infer that defendants knew of [the principal's] fraudulent activity, the Court finds that plaintiffs' allegations about defendants' knowledge are insufficient to plausibly allege that defendants aided and abetted [the principal's] fraudulent activity.").

### C. Ms. Anderson did not render 'substantial assistance.'

The final element of an aiding and abetting claim under Colorado law requires the plaintiff to show that the aider "knowingly and substantially assist[ed] the principal violation." *Alvarez LLC*, 2019 WL 3205952, at *2 (quoting *Holmes*, 885 P.2d at 308). "Establishing the substantial assistance element of aiding and abetting requires that 'the secondary party proximately caused the violation, or . . . that the encouragement or assistance be a substantial factor in causing the tort.' " *Sender v. Mann*, 423 F. Supp. 2d 1155 (D. Colo. 2006) (quoting *Aetna Cas. And Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 537 (6th Cir.2000)). As detailed above, however, the allegations in the Complaint fall far short of a plausible allegation of this element.

Even assuming Ms. Anderson was aware of Ms. Sutterfield's contracts (though it is not plausibly alleged that she was), the Complaint's threadbare allegations as to Ms. Anderson fail to demonstrate that any assistance she rendered rose to a 'substantial' level. The only assistance Ms. Anderson is alleged to have provided is her emailing Ms. Sutterfield—during their term of employment with Plaintiff—lists of Ms. Sutterfield's clients' contact and account information. *See* Dkt. # 1 ¶¶ 33, 35, 37, 39, 58, 61, 65; *cf. Sender*, 423 F. Supp. 2d at 1176 ("Sender's evidence shows at most that the Freeborn defendants transferred retainer funds at the request of their client, or in one case transferred funds to Poyfair's new law firm. This is not the substantial assistance necessary to support a claim of aiding and abetting."). As Ms. Sutterfield's assistant, one of Ms. Anderson's routine activities would have been to keep such information organized and updated, and to provide the same to Ms. Sutterfield when requested. In short, Ms. Anderson is alleged only to have done her job. And, given that they were *her* clients, Ms. Sutterfield would

15

already have been aware of the clients' contact and account information anyway. Had Ms. Anderson not organized it for Ms. Sutterfield, Ms. Sutterfield could have easily done so herself.

Moreover, it seems clear from the Complaint that Ms. Sutterfield could, and likely would, have engaged in the same course of conduct with or without Ms. Anderson's involvement. Without any apparent participation from Ms. Anderson, Ms. Sutterfield discussed her resignation with Plaintiff and located new employment with Mr. Rosenthal and Elevate Wealth Management. *See, e.g.*, Dkt. # 1 ¶¶ 40–41, 46–55. Thus, any incidental 'assistance' from Ms. Anderson did not *substantially* aid Ms. Sutterfield.

Aiding and abetting requires more than mere proximity. Plaintiff has provided nothing on which it can be awarded relief. Accordingly, and even accepting the Complaint's factual allegations as true for purposes of this Motion, Plaintiff has failed to state a claim against Ms. Anderson for aiding and abetting a breach of Ms. Sutterfield's fiduciary duty. Ms. Anderson respectfully requests Count Three be dismissed as to her.

## Conclusion

For the reasons set forth above, Ms. Anderson respectfully requests that Plaintiff's claims against her, specifically, Counts One and Three of the Complaint, be dismissed with prejudice and that the Court provide for any other and further relief to which she may be entitled under the circumstances.

**Certificate of Service**
The undersigned certifies that the foregoing instrument was served upon counsel of the parties to this action on March 27, 2025, by CM/ECF.

*/s/ Adam D. Zenor*

ZENOR LAW FIRM, PLC

By: */s/ Adam D. Zenor*
    Adam D. Zenor, AT0009698
    Derek R. LaBrie, AT0014157
    Ryan M. D'Eliseo, AT0015240

Copies to:

Nicholas J. Prola
BASSFORD REMELE, PA
100 South 5th St., Suite 1500
Minneapolis, MN 55402
Phone: 612.333.3000
nprola@bassford.com

ATTORNEY FOR PLAINTIFF
MIDWESTONE BANK

Stephen E. Csajaghy
Marisa Hudson-Arney
CONDIT CSAJAGHY, LLC
695 S. Colorado Blvd., Suite 270
Denver, CO 80246
Phone: 720.287.6602
steve@cclawcolorado.com
marisa@cclawcolorado.com

ATTORNEYS FOR DEFENDANTS
MICHAEL ROSENTHAL and ELEVATE WEALTH MANAGEMENT

111 E. Grand Ave., Suite 400
Des Moines, IA 50309
Phone: 515.650.9005
Fax: 515.206.2654
adam@zenorlaw.com
derek@zenorlaw.com
ryan@zenorlaw.com

ATTORNEYS FOR DEFENDANT
AMANDA ANDERSON

17