IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge Gordon P. Gallagher

Civil Action No. 25-cv-00412-GPG-TPO

MIDWESTONE BANK,

    Plaintiff,

v.

AMANDA ANDERSON,
MICHAEL ROSENTHAL, and
ELEVATE WEALTH AMANGEMENT,

    Defendants.

## ORDER

Before the Court is Defendant Amanda Anderson's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) (D. 26). The Court DENIES the motion for the following reasons.

### I. FACTS

This civil action arises from a financial advisor's change of employment and the decision of her clients to follow her to her new employer.[1] Carol Sutterfield was employed as a financial advisor at Plaintiff MidWest*One* Bank from April 2018 to October 6, 2023 (D. 1 at ¶¶ 12, 67). In hiring Ms. Sutterfield, Plaintiff also agreed to hire Defendant Amanda Anderson, who served as Ms. Sutterfield's assistant at her prior brokerage firm (*id.* at ¶ 28).

When Ms. Sutterfield was hired, she and Plaintiff entered into a Purchase of Sale Agreement governing the terms of Ms. Sutterfield's sale of her block of business to Plaintiff (*id.*

---
[1] The Court draws the operative facts as set forth in Plaintiff's Complaint (D. 1).

1

at ¶ 13). Ms. Sutterfield and Plaintiff also signed a Confidentiality and Non-Solicitation Agreement providing:

> As an essential ingredient of and in consideration of this Agreement and the Company's engagement of Advisor pursuant to the FIS Agreement, Advisor shall not, during the period of Advisor's services to the Company and for a period of twelve (12) months immediately following the termination of Advisor's services to the Company, whether such termination occurs during the term of the FIS Agreement or thereafter (the "Restricted Period"), directly or indirectly do any of the following (all of which are collectively referred to in this Agreement as the "Restrictive Covenant"):
>
> a. Either for Advisor or any Financial Institution: (A) induce or attempt to induce any employee of the Company with whom Advisor had significant contact to leave the employ of the Company; (B) in any way interfere with the relationship between the Company and any employee of the Company with whom Advisor had significant contact; or (C) induce or attempt to induce any customer, supplier, licensee or business relation of the Company with whom Advisor had significant contact to cease doing business with the Company or in any way interfere with the relationship between the Company and its respective customers, suppliers, licensees or business relations with whom Advisor had significant contact; or
>
> b. Either for Advisor or any Financial Institution, solicit the business of any person or entity known to Advisor to be a customer of the Company, where Advisor had significant contact with such person or entity, with respect to products, activities or services that compete in whole or in part with the products, activities or services of the Company.

(*id.* at ¶ 18).

In mid-September 2023, Ms. Sutterfield notified her boss, John Evans, of her intent to leave Plaintiff's employ, and the two began negotiating Ms. Sutterfield's purchase of the block of business she had sold to Plaintiff when she was hired (*id.* at ¶ 40). However, they failed to reach an agreement by the time Ms. Sutterfield submitted her notice of resignation on October 6, 2023 (*id.* at ¶¶ 67, 68). On October 6, both Ms. Sutterfield and Ms. Anderson left Plaintiff to work for Elevate Wealth Management (D. 26–1 at 2).

Preceding Ms. Sutterfield's notification to Mr. Evans and during their negotiations, Ms. Anderson sent her several emails containing information about her clients. Specifically, on July

19, 2023, September 8, 2023, September 15, 2023, September 28, 2023, and October 5, 2023, Ms. Anderson sent Ms. Sutterfield emails with spreadsheets entitled "Carol's Client-Summary-6-28-2023," "Annuity Tracking Spreadsheet 2023," and "Client and Account Summary 10-6-2023 and 10-12 with addresses," each containing detailed contact, tax, and account information about Ms. Sutterfield's clients (D. 1 at ¶¶ 33, 35, 39, 61, 65). The three emails Ms. Anderson sent on September 28 were sent to Ms. Sutterfield's personal email address (*id.* at ¶ 61).

On November 10, 2023, Ms. Sutterfield's attorney sent a letter to Plaintiff stating that Ms. Sutterfield "did not, and will not, solicit clients or employees of MidWest*One*" (*id.* at ¶ 70). The letter further stated that "the vast majority of Ms. Sutterfield's clients are family members or long-time friends, who will, of their own volition, move with her no matter what firm she aligns with" (*id.*). As of Spring 2024, 72 of Plaintiff's former clients with whom Ms. Sutterfield worked are now working with Ms. Sutterfield's new employer, Elevate Wealth Management (*id.* at ¶ 73).

Plaintiff originally filed suit against Ms. Sutterfield, Ms. Anderson, Elevate Wealth Management, and Michael Rosenthal (founder of Elevate Wealth Management) in the United States District Court for the Southern District of Iowa (*id.* at ¶ 1 n.1). Defendants Anderson, Rosenthal, and Elevate Wealth Management were dismissed from that lawsuit for lack of personal jurisdiction, and this lawsuit follows (*id.*). Plaintiff brings two claims against Ms. Anderson. First, Plaintiff alleges that Ms. Anderson breached her fiduciary duty of loyalty by misappropriating confidential and trade secret information and soliciting clients for Elevate Wealth Management while still employed by Plaintiff (*id.* at ¶¶ 80–82). Second, Plaintiff alleges Ms. Anderson aided and abetted Ms. Sutterfield in breaching her fiduciary duty to Plaintiff by helping her misappropriate confidential and trade secret information and solicit clients (*id.* at ¶¶ 94–95). Ms.

Anderson moves to dismiss both claims, arguing that she did not have or breach any duties to Plaintiff, and she did not have actual knowledge of Ms. Sutterfield's alleged obligations to Plaintiff (D. 26).

## II. LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true and interpreted in the light most favorable to the non-moving party, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Additionally, the complaint must sufficiently allege facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed; however, a complaint may be dismissed because it asserts a legal theory not cognizable as a matter of law. *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007); *Golan v. Ashcroft*, 310 F. Supp. 2d 1215, 1217 (D. Colo. 2004). A claim is not plausible on its face "if [the allegations] are so general that they encompass a wide swath of conduct, much of it innocent," and the plaintiff has failed to "nudge [the] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). In assessing a claim's plausibility, legal conclusions contained in the complaint are not entitled to the assumption of truth. *See Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011). The standard, however, remains a liberal pleading standard, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (citation modified).

### III. ANALYSIS

**A. Count One: Breach of Fiduciary Duty of Loyalty**

As an employee of Plaintiff's, Ms. Anderson owed Plaintiff a duty of loyalty, and Plaintiff pleads facts sufficient to allege that Ms. Anderson breached that duty. Under Colorado law, unless otherwise agreed, an employee owes a duty of loyalty to her employer. *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 492 (Colo. 1989); *Graphic Directions, Inc. v. Bush*, 862 P.2d 1020, 1022 (Colo. App. 1993).[2] This duty requires that the employee act solely for the benefit of the employer in all matters connected with her employment. *See Jet Courier,* 771 P.2d at 492 (citing Restatement (Second) Agency § 387 (1957)). Underlying the duty of loyalty "is the policy consideration that commercial competition must be conducted through honesty and fair dealing." *Id*. In an attempt to balance this consideration with "society's interest in fostering free and vigorous economic competition," courts have recognized "a privilege in favor of employees which enables them to prepare or make arrangements to compete with their employers prior to leaving [their] employ." *Id.* at 493 (citation modified). However, this privilege does not permit an employee to solicit customers for a rival business before the end of his or her employment. *Id*. Nor does it permit an employee to "use confidential information peculiar to his [or her] employer's business and acquired herein" in arrangements to compete. Restatement (Second) Agency § 393 cmt. e.

---

[2] A federal court sitting in diversity jurisdiction pursuant to 28 U.S.C. § 1332 applies the substantive law of the forum state. *Barrett v. Tallon,* 30 F.3d 1296, 1300 (10th Cir. 1994). Ms. Anderson's motion includes a discussion on why she did not owe a duty of loyalty to Plaintiff, for which she cites *DTC Energy Group, Inc. v. Hirschfield,* 420 F. Supp. 3d 1163, 1171 (D. Colo. 2019) (D. 26–1 at 5–7). As *Hirschfield* is an unreported case from the District of Colorado, not the Tenth Circuit, it is not binding on this Court. Instead, the Court relies on statements of Colorado substantive law as provided by Colorado state courts.

Here, the Complaint states that Ms. Anderson worked for Plaintiff, and Ms. Anderson has not provided any indication of an agreement exempting her from the duty of loyalty employees owe to employers. Therefore, the Complaint adequately alleges that Ms. Anderson owed Plaintiff a duty of loyalty. Plaintiff argues that Ms. Anderson breached that duty by sending multiple emails containing confidential and trade secret information to Ms. Sutterfield, including three emails sent to Ms. Sutterfield's personal email address, and soliciting clients (D. 1 at ¶¶ 81–82). The Court finds that the Complaint contains facts sufficient to state a claim for breach of fiduciary duty of loyalty based on the emails Ms. Anderson sent Ms. Sutterfield.

According to the Complaint, Ms. Anderson's emails to Ms. Sutterfield included spreadsheets containing client identification, account, and beneficiary information – all of which Plaintiff contends is confidential and trade secret information (*id.* at ¶¶ 33–34). Plaintiffs show that Ms. Sutterfield had already started negotiating her departure from Plaintiff by the time Ms. Anderson sent the three emails to Ms. Sutterfield's personal account in September 2023 (*id.* at ¶ 58). The last email Ms. Anderson sent to Ms. Sutterfield containing such information was sent on October 5, 2023, the day before they both resigned (*id.* at ¶¶ 65, 67). Accepting these allegations as true, the emails – particularly those sent to Ms. Sutterfield's personal account – indicate that Ms. Anderson impermissibly prepared to compete with Plaintiff by using Plaintiff's confidential information. *See* Restatement (Second) Agency § 393 cmt. e. The timing of the emails suggests that they were sent to Ms. Sutterfield so that she would have the information after she and Ms. Anderson both left Plaintiff's employ to go work for a rival company. Therefore, the Complaint contains sufficient facts to support a claim that Ms. Anderson breached her duty of loyalty by misappropriating Plaintiff's confidential and trade secret information.

As for Plaintiff's argument that Ms. Anderson solicited "MidWest*One* clients to follow her to Elevate Wealth Management while still employed by MidWest*One*," Plaintiff cites as evidence two emails from former clients of Plaintiff's who now work with Elevate Wealth Management (*id.* at ¶ 64). The first was sent from Jennifer O'Shea to Ms. Sutterfield and Ms. Anderson on October 3, 2023 (*id.* at ¶ 63). The email stated, "[c]an you remind me of the name of the firm you are merging with? I wrote it down on a notebook that is at the office and I'm at home today" (*id.*). The Complaint does not clarify who Ms. O'Shea was referencing in her email as having told her which firm they were moving to, but even if it did, an employee is generally permitted to "advise current customers that [s]he will be leaving h[er] current employment" under the "privilege to make preparations to compete after the termination of h[er] employment." *Jet Courier,* 771 P.2d at 494. The second email was sent from Kirsten Bell on November 11, 2023 (*id.* at ¶ 71). Ms. Bell "notified MidWest*One* that Sutterfield had reached out to her and her father to notify them of her move to Elevate Wealth Management and that all accounts would still be serviced by Sutterfield at Elevate Wealth Management" (*id.*). This email indicates that, at most, Ms. Sutterfield – not Ms. Anderson – solicited Ms. Bell to follow her to Elevate Wealth Management. The Complaint does not argue that Ms. Anderson ever contacted clients directly. Therefore, these emails do not support Plaintiff's claim that Ms. Anderson was soliciting clients while still employed by Plaintiff, but the claim survives Ms. Anderson's motion to dismiss based on the emails Ms. Anderson sent Ms. Sutterfield.

### B. Count Three: Aiding and Abetting Breach of Fiduciary Duty

Plaintiff pleads facts sufficient to allege that Ms. Anderson aided and abetted Ms. Sutterfield in breaching her fiduciary duty. To prevail on a claim for aiding and abetting a breach

of fiduciary duty, a plaintiff must show (1) that there was a breach of a fiduciary duty owed to plaintiff, (2) the defendant knowingly participated in the breach, (3) the defendant substantially assisted the breach, and (4) damages. *Nelson v. Elway*, 971 P.2d 245, 249 (Colo. App. 1998). "The relevant 'knowledge' for liability to attach for knowingly participating in a fiduciary's breach of duty is knowledge as to the primary violator's status as a fiduciary and knowledge that the primary's conduct contravenes a fiduciary duty." *Holmes v. Young,* 885 P.2d 305, 309 (Colo. App. 1994) (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 282–8 (2d Cir. 1992)).

Here, Plaintiff states facts adequately showing that Ms. Anderson knowingly and substantially assisted Ms. Sutterfield in breaching her fiduciary duty to Plaintiff. The Complaint alleges Ms. Sutterfield, similarly to Ms. Anderson, breached her fiduciary duty to Plaintiff by misappropriating confidential and trade secret information and soliciting clients to follow her to Elevate Wealth Management (D. 1 at ¶¶ 94–95). Plaintiff points to the same emails sent by Ms. Anderson and the emails from former clients as evidence of Ms. Sutterfield's breach (*id.* at ¶¶ 37, 64, 71). For the reasons already stated in regard to the breach of fiduciary duty claim against Ms. Anderson, the emails Ms. Anderson sent Ms. Sutterfield adequately support the allegation that Ms. Sutterfield was preparing to compete with Plaintiff using Plaintiff's confidential information. The fact that Ms. Sutterfield had already started negotiating her departure from Plaintiff by the time she received three emails containing confidential client and account information to her personal email address is particularly convincing (*id.* at ¶ 58). Furthermore, interpreting the email from Ms. Bell in a light most favorable to Plaintiff, it suggests that Ms. Sutterfield was soliciting clients before terminating her employment with Plaintiff by telling them the name of the firm she was

moving to and that "all accounts would still be serviced" by her there (*see id.* at ¶¶ 63, 71). Therefore, Plaintiff sufficiently pleads that Ms. Sutterfield breached a fiduciary duty.

The Complaint states that, "[u]pon information and belief, Anderson knew that Sutterfield had entered into a Purchase and Sale Agreement with MidWest*One*" as well as that "Sutterfield had entered into the Confidentiality and Non-Solicitation Agreement with MidWest*One*" (*id.* at ¶ 31). Accepting these facts as true, it is reasonable to infer that Ms. Anderson knew that Ms. Sutterfield had a duty to refrain from misappropriating confidential information and soliciting clients, satisfying the requirement that Ms. Anderson knew of Ms. Sutterfield's "status as a fiduciary." *See Holmes,* 885 P.2d at 309. The fact that Ms. Anderson was included on the email from Ms. O'Shea inquiring about Ms. Sutterfield's new firm supports the allegation that Ms. Anderson knew Ms. Sutterfield was contacting and potentially soliciting clients, satisfying the requirement that Ms. Anderson knew that Ms. Sutterfield's "conduct contravene[d] a fiduciary duty." *See id.* Thus, Plaintiff sufficiently pleads that Ms. Anderson knowingly participated in Ms. Sutterfield's breach.

Ms. Anderson's emails to Ms. Sutterfield containing confidential information about clients and accounts leading up to Ms. Sutterfield's departure, including three emails she sent to Ms. Sutterfield's personal email address after Ms. Sutterfield notified Plaintiff of her intent to leave, appear relevant to Ms. Sutterfield's ability to maintain her client relationships and accounts after leaving Plaintiff's employ (D. 1 at ¶¶ 33, 35, 39, 61, 65). Notably, all the emails were sent by Ms. Anderson to Ms. Sutterfield. These facts are sufficient to allege that Ms. Anderson's assistance to Ms. Sutterfield was substantial.

9

For the reasons, the Complaint states facts sufficient to support each element of a claim for aiding and abetting breach of fiduciary duty of loyalty.

## IV.  CONCLUSION

Accordingly, Defendant Amanda Anderson's Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6) (D. 26) is DENIED.

DATED January 22, 2026.

BY THE COURT:

Gordon P. Gallagher
United States District Judge